## No. 10,293.

### ADELINE E. STRINGER VS. LOUIS MATHIS.

1. A woman who keeps a room in her house to be visited and occasionally occupied by her concubine, without any contract for the payment of rent by the latter, cannot enforce such payment.

2. The evidence in this case satisfying us that the services for which payment is claimed, had no other motive than the pre-existing concubinage of the parties and were merely incidental to such relation, the plaintiff cannot claim renumeration therefor.

3. The evidence showing that there was no intention on the part of plaintiff to claim, or of the concubine to make, any payment of rent, or for services, no obligation to pay was created, especially when it appears that plaintiff received, in other ways, a pecuniary *quid pro quo* for the benefits conferred.

APPEAL from the Civil District Court, for the Parish of Orleans. *Voorhies*, J.

*Branch K. Miller* for Plaintiff and Appellant.

*Henry P. Dart* for Defendant and Appellee.

The opinion of the Court was delivered by

FENNER, J.  Joseph Mathis, a bachelor, died on April 1st, 1887,

leaving an estate of about $20,000, which was inherited by the defendant as his sole legal heir.

The plaintiff, a lodging house keeper in this city, claims $1644 90 for room rent due by Joseph Mathis from May 1st, 1884, to the date of his death, and $500 for services rendered to him as a sick-nurse during the same period.

The defenses are a general denial and the special defense that plaintiff had, for many years been the concubine of Joseph Mathis, and that he had, on that account, expended large sums of money in her behalf; that he visited her house during the time for which renumeration is claimed solely for the purposes of such concubinage, and that, if the room was retained for him, it was solely for that purpose.

The evidence leaves not the slightest doubt upon our minds as to the relations existing between plaintiff and Joseph Mathis. They were those of concubines.

From 1867 to 1878 Mathis lived in the house kept by plaintiff.

In 1878 he desired to break off his open relations with plaintiff, in order to retain relations with his brother, and, from that time, he roomed and boarded elsewhere. Nevertheless he continued to make regular weekly visits to the house of plaintiff, spending there Saturday night, Sunday and Sunday night. It was on these occasions that he occupied the room for which rent is claimed, and which was undoubtedly, retained for his occupancy and not rented to others. We are satisfied that the sole motive of the visits or occupancy of the room by Mathis and of its retention by plaintiff was the relation of concubinage existing between them. What other motive does the evidence suggest? He had his room elsewhere which he paid for and occupied. Why did he want another room? It is suggested that he wanted it in order to receive the care of plaintiff as a nurse. But did he only require nursing on Saturday and Sunday nights? He went without nursing during the rest of the week.

There is no pretense that there was any contract that he should pay rent for the room. If there was such a contract it might be that the concubinage would be no defense.

That he did not pay rent for the room is evidenced by this suit.

If the plaintiff can recover it must be on the ground that there was an implied contract on the part of plaintiff, resulting from his occupancy.

But are we to hold that that woman or man who keeps a room in his or her house to be visited occasionally and occupied by a concubine, without any contract to pay rent, can claim or enforce such payment?

The cases cited by plaintiff clearly exclude such an allowance.

In Viens vs. Brickell 8, Martin 11, the court overruled a defense of concubinage, but the opinion said, after admitting the fact of concubinage: "This, however, does not seem to have been the *motive* of their coming together, but rather the *consequence* of the familiarity which a close union of interest is apt to create between persons of different sexes. We, therefore, cannot view this circumstance as preventing or destroying any right which she may have on defendant for a renumeration, etc." Clearly implying that had the concubinage been pre-existing and been the motive of their coming together, the defense would have been good.

In succession of Perenilhet 23d Ann. 294, the court said: "An employer cannot pay off a female employee by robbing her of her virtue. Such a method of extinguishing obligations is not known to the law. If concubinage had been proved to have been the cause and motive of the parties living together in the same house in the first instance, and the services in question to have been merely incidental to such a state of living, our conclusion might have been different."

The evidence in the case fully convinces us that there was no intention on the part of plaintiff to require, or of Mathis to make, any payment for the occupancy of the room or for services. It further satisfies us that Mathis did not enrich himself at plaintiff's expense, but on the contrary, that he gave in other ways, a pecuniary *quid pro quo* for all the benefits received from her. The plaintiff failed to testify in her own behalf, and if she might, by her testimony, have strengthened her claim, its absence is her own fault. As it stands on this record, we agree with the judge *a quo* that it is not sustained.

We have not discussed the conflicts in the evidence, but we have carefully considered and weighed them, and have contended ourselves with announcing our conclusions.

Judgment affirmed.